**CLOSING**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

April 8, 2021

VIA ECF

**LETTER ORDER**

Re:   Brian Gozdenovich v. AARP, Inc., et al.
      Civil Action No. 18-2788

Dear Litigants:

Before the Court are (1) Defendants UnitedHealth Group, Inc.'s and United Healthcare Insurance Company's ("United") and Defendants AARP, Inc.'s, AARP Services, Inc.'s, and AARP Insurance Plan's ("AARP" and together with United, "Defendants") Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment, ECF No. 152; (2) Plaintiff Brian Gozdenovich's ("Plaintiff") Motion for Class Certification, ECF No. 177; and (3) Plaintiff's Motion to Strike, ECF No. 179. Each Motion is opposed. For the reasons explained below, Defendants' Motion is **GRANTED**, and Plaintiff's Motions are **DENIED AS MOOT**.

**I.   BACKGROUND**[1]

This putative consumer class action arises from the marketing and sale of AARP-branded Medicare supplement health insurance ("AARP Medigap") policies to senior citizens and disabled individuals.[2] See Am. Compl. ¶ 3. The Amended Complaint generally alleges that AARP partnered with United to sell AARP Medigap policies with artificially inflated premiums, in violation of state law. Id. ¶¶ 30, 72. Plaintiff purchased such a policy in late 2018 and has paid a premium for that policy every month since. Id. ¶ 19. He brings this action on behalf of himself and a proposed class of "[a]ll persons in the State of New Jersey who purchased or renewed an AARP Medigap policy." Id. ¶ 78.

The New Jersey Department of Banking and Insurance ("DOBI") regulates Medigap insurance in New Jersey. Valley Hosp. v. Kroll, 368 N.J. Super. 601, 611 (Law. Div. 2003) (citing N.J.S.A. § 17B:26A-2). Relevant here, any premium charged for Medigap insurance must first be

---

[1] These facts are drawn from the Amended Complaint, ECF No. 63, Defendants' Statement of Undisputed Material Facts ("Def. SUMF"), ECF No. 152.2, and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl. RSUMF"), ECF No. 173.1. Disputes of fact are noted.

[2] Medigap policies are privately issued contracts that "supplement[] Medicare by covering expenses not covered by the federal government, such as deductibles or coinsurance amounts." McGurl v. Trucking Emps. of N. Jersey Welfare Fund, Inc., 124 F.3d 471, 479 n.1 (3d Cir. 1997).

filed with the DOBI.  See N.J.S.A. § 17B:26A-6(a); N.J.A.C. § 11:4-23.13(c).  Medigap policies must offer "benefits which are reasonable in relation to the premium charged," and the DOBI may reject a policy with "provisions which are unjust, unfair, inequitable, misleading, or contrary to law."  N.J.S.A. § 17B:26A-6(a)(6), (c).  United filed its proposed rates with the DOBI during the relevant period.  Def. SUMF ¶ 138; Pl. RSUMF ¶ 138.  During that same period, Plaintiff paid only the DOBI-approved premium rate for his Medigap coverage.  Def. SUMF ¶ 131; Pl. RSUMF ¶ 131.

Plaintiff principally alleges that his insurance rate was artificially inflated to account for unlawful commission payments from United to AARP.  Am. Compl. ¶¶ 72-77.[3]  For each new AARP Medigap policy or renewal, United pays AARP an amount tied to a percentage of the policy's cost.  Id. ¶ 6.  This payment is passed along to consumers and built into the amount billed for insurance coverage.  Id. ¶ 59.  Defendants disclose the existence of a payment from United to AARP but characterize it as a "royalty" for the use of AARP's intellectual property.  Id. ¶¶ 7, 63.  Plaintiff disputes this characterization and contends that the payment is actually a disguised commission paid in exchange for AARP's marketing and sale of Medigap policies.  Id. ¶¶ 10, 53-54.  Plaintiff further asserts that AARP effectively acts as an unlicensed insurance agent, rendering the commission payments unlawful under New Jersey law.  Id. ¶ 10.[4]  Because the cost of the payments were incorporated into the amount billed for Medigap coverage, Plaintiff contends that he and each proposed class member suffered an actual and ascertainable loss equal to the amount paid to AARP for each policy.  Id. ¶¶ 12, 17, 77, 91.

Former plaintiff Barbara Bloom ("Bloom") initiated this action on February 27, 2018.  ECF No. 1.  The parties later stipulated to dismissal of Bloom's claims with prejudice.  ECF No. 61.  On May 22, 2019, Plaintiff filed the Amended Complaint asserting five claims against Defendants: (1) violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. ("NJCFA"), Am. Compl. ¶¶ 87-91 ("Count I"), (2) conversion, id. ¶¶ 92-95; (3) unjust enrichment, id. ¶¶ 96-99 ("Count III"); (4) fraudulent concealment, id. ¶¶ 100-06 ("Count IV"); and (5) fraud, id. ¶¶ 107-110 ("Count V").[5]  Plaintiff has voluntarily withdrawn Counts IV and V.  See Pl. Mem. at 29 n.19, ECF No. 173.

## II.   LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is warranted if "there are no material issues of fact" and the movant is "entitled to judgment as a matter of law."  Zimmerman v. Corbett, 873 F.3d 414, 417-18 (3d Cir. 2017) (citation omitted).  The Court "must accept all of the allegations in the pleadings of the [non-moving party] as true and draw all reasonable inferences in favor of the non-moving party."  Id. (citation omitted).  The Court assesses

---

[3] Plaintiff concedes that he paid only the rate approved by the DOBI but "notes that the DOBI never approved of the illegal commissions."  Pl. RSUMF ¶ 131.

[4] New Jersey law prohibits an insurer from paying a commission for "selling, soliciting or negotiating insurance" to an unlicensed agent.  N.J.S.A. § 17:22A-41(a).  Defendants dispute that AARP ever sold, solicited, or negotiated Medigap insurance and argue that United's payments were not contingent on such activities.  See Def. Mem at 30-37, ECF No. 152.1.  The Court need not resolve this dispute to assess the instant Motion.

[5] Besides the substitution of plaintiffs, the Amended Complaint is unchanged from Bloom's initial complaint.

a Rule 12(c) motion "under the same standards that apply to a Rule 12(b)(6) motion" to dismiss. Id. (citation omitted).

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). The Court construes all facts and inferences in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

The Court accepts the allegations in the Amended Complaint as true for purposes of resolving Defendants' Motion. However, because the Court must refer to certain undisputed evidence outside the Amended Complaint, it will proceed under Rule 56.

### III.   ANALYSIS

Defendant argues that it is entitled to judgment on the pleadings or summary judgment because Plaintiffs' claims are barred by the filed-rate doctrine. The Court agrees.

The filed-rate doctrine generally provides that "a rate filed with . . . a governing regulatory agency is unassailable in judicial proceedings brought by ratepayers." Leo v. Nationstar Mortg. LLC, 964 F.3d 213, 214 (3d Cir. 2020) (citation and quotation marks omitted). The doctrine has two strands—either of which could defeat a court's jurisdiction to review a filed rate. First, the "nonjusticiability strand" recognizes that "(1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." In re N.J. Title Ins. Litig., 683 F.3d 451, 456 (3d Cir. 2012) (citation and quotation marks omitted). Second, the "nondiscrimination strand" recognizes that "victorious plaintiffs would wind up paying less than non-suing ratepayers." Id. (citation and quotation marks omitted). The Court may not entertain a claim that implicates either strand. Id. at 457 (citation omitted).[6]

The nonjusticiability strand prohibits any claim "seeking damages tied to the amount of an alleged overcharge" in a filed rate. Leo, 964 F.3d at 216. The applicability of the filed-rate doctrine is therefore determined by the character of the relief sought, rather than the specific conduct challenged. Two Third Circuit cases illustrate this point. In Alston v. Countrywide Financial, the plaintiffs alleged that their mortgage insurance premiums were funneled into an unlawful kickback scheme, in violation of the Real Estate Settlement Procedures Act ("RESPA"). 585 F.3d 753, 755 (3d Cir. 2009). RESPA permits a plaintiff who purchased mortgage insurance "infected" by such a scheme to recover damages "fixed at three times the total charge paid by the

---

[6] Both the Third Circuit and New Jersey courts have applied the filed-rate doctrine to New Jersey state law claims challenging an insurance premium rate filed with the DOBI. See, e.g., Leo, 964 F.3d at 215 n.1; Richardson v. Standard Guar. Ins. Co., 371 N.J. Super. 449, 463-64 (App. Div. 2004).

3

consumer . . . and not merely any overcharge." Id. at 760 (emphasis added).  Because the damages sought were not tied to an overcharge, the RESPA claim could proceed even though the premium rate had been filed with the Pennsylvania Insurance Department.  Id. at 764.

On the other hand, in Leo v. Nationstar Mortgage, plaintiffs brought claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the NJCFA, and New Jersey common law alleging that an insurance company inflated a rate filed with state regulators as part of a kickback scheme, and sought damages caused by the inflated premiums.  964 F.3d at 215-16.  The Third Circuit held that the filed-rate doctrine barred the plaintiffs' federal and state claims because the borrowers sought damages tied to an alleged overcharge "baked into" a rate filed with a regulatory agency.  Id.  The Court made clear that "the filed-rate doctrine brooks no distinction between, on one hand, challenging a filed rate as unreasonable and, on the other hand, challenging an overcharge fraudulently included in a filed rate."  Id. at 216.

Each of Plaintiff's remaining claims seek relief expressly tied to "artificially inflated" Medigap premiums stemming from Defendants' alleged unlawful conduct.  Am. Compl. ¶ 72; see also id. ¶ 91 (NJCFA); id. ¶ 95 (conversion); id. ¶ 97 (unjust enrichment).  The premiums at issue were filed with the DOBI, which is charged with regulating Medigap insurance in New Jersey.  See Def. SUMF ¶¶ 131, 138; Pl. RSUMF ¶¶ 131, 138.  Plaintiff's claims are therefore barred by the filed-rate doctrine and Leo, 964 F.3d 914.

Plaintiff's arguments to the contrary are unavailing.  First, Plaintiff argues that because he seeks to vindicate a statutory right—treble damages under the NJCFA—his claim is more similar to the RESPA claim in Alston and may proceed.  Unlike in Alston, however, Plaintiff does not seek recovery based on the total amount of his premiums.  The Amended Complaint unambiguously requests damages tied to an overcharge, i.e., amounts that were "paid above market rates" and "diverted to AARP in illegal commissions."  Am. Compl. ¶ 91.  The Court could not determine which damages to treble without determining the overcharge amount.[7]  This is the precise inquiry prohibited by the filed-rate doctrine.  Leo, 964 F.3d at 217; see also Richardson, 371 N.J. Super. at 460 (holding that "the [filed-rate] doctrine bars claims for monetary relief 'where the damage claims are premised on state contract principles, consumer fraud, or other bases on which plaintiffs seek to enforce a rate other than the filed rate'") (quoting Weinberg v. Sprint Corp., 173 N.J. 233, 243 (2002)).

Second, Plaintiff contends that he does not challenge the reasonableness of United's rates, but rather targets the unlawful commissions paid by United, which were incorporated into the rates.  However, the Court does not—and cannot—recognize a distinction between a challenge to "wrongful conduct" that led to an inflated rate and a challenge to the reasonableness of the rate itself.  Leo, 964 F.3d at 215-16; see also Weinberg, 173 N.J. at 244 ("The filed rate doctrine

---

[7] As noted above, Leo held that the rate-filed doctrine barred claims under the NJCFA and RICO, which also authorizes treble damages.  See 18 U.S.C. § 1964(c).

4

precludes plaintiff's claim of loss under the [NJCFA] because he cannot recover monetary damages when he paid a rate that was consistent with defendant's approved filed tariff.").[8]

Third and finally, Plaintiff argues that this lawsuit does not implicate the filed-rate doctrine's nondiscrimination strand because a successful suit will result in a reduced price for everyone in New Jersey enrolled in a United AARP Medigap plan. The Court, however, need not determine whether the nondiscrimination strand applies where, as here, claims are barred by the nonjusticiability strand. See In re N.J. Title Ins. Litig., 683 F.3d at 459 (applying New Jersey law).

Consequently, each of Plaintiff's claims are barred by the filed-rate doctrine and summary judgment in favor of Defendants is warranted.[9]

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment, ECF No. 152, is **GRANTED**. Plaintiff's Motion for Class Certification, ECF No. 177, and Plaintiff's Motion to Strike, ECF No. 179 are each **DENIED AS MOOT**. This matter is now **CLOSED**.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[8] Plaintiff also argues that the Court's November 30, 2018 denial of Defendants' motion to dismiss based on the filed-rate doctrine is now the "law of the case" and should not be revisited. See ECF No. 40. The Court disagrees. Relying on Alston, the Court previously concluded that Bloom's claims were not barred by the filed-rate doctrine because they challenged "wrongful conduct" rather than a rate's reasonableness. Id. at 3; see also Alston, 585 F.3d at 765 ("It is absolutely clear that the filed rate doctrine simply does not apply here. Plaintiffs challenge . . . allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct."). As discussed above, the Third Circuit later clarified the scope of Alston and barred challenges to wrongful conduct where a plaintiff seeks damages tied to the amount of an overcharge. Leo, 964 F.3d at 215-16. The Court views Leo as an intervening change of law and declines to invoke the law-of-the-case doctrine. See Publ. Int. Rsch. Grp. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997).

[9] Because the filed-rate doctrine bars Plaintiff's claims, the Court does not reach Defendants' remaining arguments for summary judgment.

5